|   |   |   |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | IN THE UNITED STATES DISTRICT COURT | |
| 9 | FOR THE EASTERN DISTRICT OF CALIFORNIA | |
| 10 | RALPH BLAKE JAMES, | |
| 11 | Plaintiff, | No. 2:11-cv-1380 EFB |
| 12 | vs. | |
| 13 | MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | |
| 14 | | |
| 15 | Defendant. | ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed below, the court grants the Commissioner's motion and denies plaintiff's motion.

I. BACKGROUND

Plaintiff protectively applied for a period of disability, DIB and SSI, on July 16, 2008, alleging that he had been disabled since June 13, 2008. Administrative Record ("AR") 53-54. Plaintiff's applications were initially denied on December 9, 2008, and upon reconsideration on February 27, 2009. *Id.* at 58, 63, 71, 74. On January 28, 2010, a hearing was held before

1

administrative law judge ("ALJ") Richard J. Kallsnick. *Id.* at 25. Plaintiff was represented by counsel at the hearing, at which he and a vocational expert ("VE") testified. *Id.* at 25-45.

On February 26, 2010, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1] *Id.* at 13, 20. The ALJ made the following specific findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since June 13, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: Depressive Disorder NOS, lumbar degenerative disk disease, and osteoarthritis (20 CFR 404.1520(c) and

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id*.

416.920(c)).

...

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

...

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can lift/carry 20 pounds occasionally or 10 pounds frequently. In an 8-hour workday, he can stand/walk or sit for 6 hours with normal breaks. Stooping is occasional. The claimant has no work-related limitation from his psychological symptoms and he can remain attentive provided he uses his medications appropriately.

...

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

...

7. The claimant was born [in] 1960 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

...

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 13, 2008 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 15-20.

Plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 8. However, on February 16, 2011, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. *Id.* at 3.

## II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. ANALYSIS

Plaintiff argues that the ALJ erred by: (1) failing to include plaintiff's severe mental impairment limitations at step five of the sequential evaluation process, (2) failing to properly consider the medical opinion of plaintiff's treating physician, and (3) improperly rejecting plaintiff's testimony.

////

4

A. <u>The ALJ Did Not Err by Not Including Plaintiff's Mental Limitations in the Residual Functional Capacity Determination or in the VE Hypotheticals.</u>

Plaintiff argues that the ALJ erred by failing to include plaintiff's mental limitations in his residual functional capacity ("RFC") determination, and in the hypotheticals he propounded to the VE. Specifically, plaintiff argues that because the ALJ found a severe mental impairment at step two of the sequential evaluation, the ALJ was required to include mental limitations in the RFC and VE hypotheticals at step five. Pl.'s Mot. For Summ. J., Dckt. No. 17 at 3-4.

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. *Bowen*, 482 U.S. at 153. At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p (1996)). The step two severity determination is "merely a threshold determination of whether the claimant is able to perform his past work. Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).

Pursuant to the analytical procedure prescribed by the regulations, after the ALJ determines that the claimant has a medically determinable mental impairment, he then rates the degree of the claimant's functional limitations in four areas, known as the "B Criteria": (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and, (4) episodes of decompensation. 20 C.F.R. §1520a(b)-(c); *see also* Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders. In the first three areas, the ALJ rates the limitations as either none, mild, moderate, marked, or extreme. The fourth functional area, episodes of decompensation, is rated

5

1  on a four point scale of none, one or two, three, and four or more. 20 C.F.R. 404.1250a(c)(3)
2  and (4)).

3  If a severe impairment exists, all medically determinable impairments must be considered
4  in the remaining steps of the sequential analysis. 20 C.F.R. § 404.1523. The ALJ "must
5  consider the combined effect of all of the claimant's impairments on her ability to function,
6  without regard to whether each alone [i]s sufficiently severe." *Smolen*, 80 F.3d at 1290; 20
7  C.F.R. § 404.1523.

8  Here, although the ALJ found that plaintiff had only mild or moderate limitations in the
9  first three functional areas, he ultimately concluded that plaintiff's Depressive Disorder NOS
10 ("Not otherwise specified") met the threshold "severity" requirement for purposes of step two.
11 AR 15-17.[2] Pursuant to 20 C.F.R. § 404.1520a, an ALJ is required to use a "special technique"
12 for assessing the severity of a mental impairment (i.e., depression). Plaintiff does not argue that
13 the ALJ failed to employ the technique; rather, plaintiff argues that the ALJ's findings are
14 inconsistent because the severe mental impairment was not included in plaintiff's RFC. Dckt.
15 No. 17 at 3-4.

16 The B Criteria ratings allow the ALJ to determine the severity of the claimant's
17 impairments at step two of the sequential evaluation. 20 C.F.R. § 404.1520a(d). The residual
18 functional capacity determination is a separate determination, made in order to assess the
19 claimant's ability to perform the functions of his past work (step four), or if he cannot do his past
20 work, other work (step five). Thus, the ALJ's findings here at step two that plaintiff had only
21 "mild restriction" in daily living activities, "moderate difficulties" in social functioning, and
22 "moderate difficulties" "with regard to concentration, persistence or pace" were separate from
23 his findings at step five. AR 16; *see Hoopai v. Astrue,* 499 F.3d 1071, 1076 (9th Cir. 2007)
24 ////

---

[2] The ALJ's findings concerning plaintiff's physical impairments are not disputed by the parties and are therefore not addressed.

6

("The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five.").[3]

Although the ALJ found the mental impairment severe at step two, this finding did not compel its inclusion in the RFC at step five. *Keokham v. Astrue*, No. CIV S-07-0426 EFB, 2008 WL 4196972, at *3-5 (E.D.Cal. Sept. 9, 2008). The Ninth Circuit has explicitly rejected the argument that plaintiff asserts here:

> The administrative law judge's (ALJ's) finding that . . . [plaintiff] presented with a severe mental impairment at step two of the sequential analysis *did not compel inclusion of findings in the residual functional capacity (RFC) determination at step five of the analysis.*
>
> In *Hoopai v. Astrue,* 499 F.3d 1071, 1076 (9th Cir. 2007), we held "that satisfaction of the step-two threshold requirement that a claimant prove her [mental] limitations are severe is not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids." . . . If a finding of severe mental impairment at step two does not compel inclusion of specific mental limitations at all, *a fortiori*, it does not compel the ALJ to include any specific mental limitations in the RFC or to present them to the vocational expert for the purposes of determining whether the claimant can perform jobs existing in significant numbers in the national economy.

*Maher v. Commissioner of Soc. Sec. Admin.*, 474 Fed.Appx. 609, 2012 WL 2860751, at *609-10 (9th Cir. July 12, 2012) (emphasis added).

////

---

[3] The Ninth Circuit's reasoning in *Hoopai* is instructive. It involved severe impairments of depression and back pain. The plaintiff argued that since the depression was found to be severe at step two, it must automatically be a significant non-exertional limitation at step five such that vocational testimony was required. *Id.* at 1076. The court rejected this argument, reasoning that if step five and step two did not require separate severity determinations, they would otherwise collapse into a single step and "a vocational expert would be required in every case in which a step-two determination of severity is made." *Id.* at 1076 (citing *Heckler v. Campbell,* 461 U.S. 458, 461 (1983)). Plaintiff attempts to distinguish *Hoopai* by arguing that here, "the depression did not stand alone." Pl.'s Reply, Dckt. No. 24 at 2. However, though *Hoopai* involved an ALJ's determination that the claimant's depression and back pain impairments were severe, the court discussed the depression impairment alone because the plaintiff specifically challenged the ALJ's failure to include depression-related impairments in the RFC, as is the case here. 499 F.3d at 1075-76.

Concerning the RFC here, plaintiff specifically cites sections 404.1520a(d)(3) and 416.920a(d)(3) for the proposition that "[s]evere mental impairments must be in the mental RFC assessment." Pl.'s Reply, Dckt. No. 24 at 2. Plaintiff further argues that "[s]urely the Commissioner cannot simply ignore" these regulation sections, which state, "[O]nce a mental impairment is considered to be severe, it *must* be included in the residual functional capacity assessment." *Id.* Plaintiff misquotes these regulations. The regulations instead provide that "[i]f we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity." 20 C.F.R. § 404.1520a(d)(3); 20 C.F.R. § 416.920a(d)(3). Plaintiff's quote actually derives from *Hargis v. Sullivan*, 945 F.2d 1482 (10th Cir. 1991), and is an inference made by the Tenth Circuit from different code sections than those cited by plaintiff. 945 F.2d at 1489.

Nevertheless, the ALJ did consider plaintiff's mental impairment in assessing his RFC. The ALJ found that plaintiff "has no work-related limitation from his psychological symptoms and he can remain attentive provided he uses his medications appropriately." AR 16-17. In declining to include any mental limitations in the RFC, the ALJ noted that in September 2008, Dr. Morgan, one of plaintiff's treating physicians, opined that plaintiff "could attain a higher level of psychological functioning in one or two years with appropriate treatment." *Id.* at 17, 246. The ALJ also wrote that "in a medical note in July 2009 [Dr. Morgan] stated that his depression had improved." *Id.* at 18, 323. The ALJ concluded that "[n]o treating or examining source has opined that the claimant's [mental] impairments, . . . are disabling or . . . significantly restrict his movement or activities of daily living." *Id.* at 18. Accordingly, the ALJ did not err by not including any mental limitations in plaintiff's RFC.

Concerning the VE hypotheticals in this case, plaintiff argues that the ALJ erred in not including the limitations from plaintiff's mental impairment, which the ALJ found in step two, in the hypotheticals he propounded to the VE in step five. Dckt. No. 17 at 4. As previously noted, the Ninth Circuit has explicitly found this argument is without merit. *Maher*, 474 Fed.Appx. at

609-610 ("a finding of severe mental impairment at step two . . . does *not* compel the ALJ to include any specific mental limitations in the RFC *or to present them to the vocational expert for the purposes of determining whether the claimant can perform jobs existing in significant numbers in the national economy*" in step five) (emphasis added)).

Plaintiff cites *Flores v. Shalala*, 49 F.3d 562 (9th Cir. 2005), which found that "the vocational expert's testimony [may only be relied upon] if the questions posed by the ALJ include *all* of the claimant's functional limitations, both physical and mental." *Id.* at 570 (emphasis added); Dckt. No. 17 at 4. However, plaintiff fails to note the caveat to this rule. A hypothetical must "set out all the limitations . . . of the particular claimant" that are "*supported by the record.*" *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)) (emphasis added) (holding an ALJ did not err by not including unsupported limitations in a VE hypothetical because "[t]he vocational expert's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record"); *see Embrey,* 849 F.2d at 422; *see Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("A vocational expert's testimony in a disability benefits proceeding 'is valuable only to the extent that it is supported by medical evidence.'") (quoting *Sample v. Schweiker*, 694 F.2d 639, 643-44 (9th Cir. 1982)).

Therefore, an "ALJ need not include all claimed impairments in his hypotheticals," provided he "make[s] specific findings explaining his rationale" for not including limitations he finds unsupported by the record. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997). As discussed above, the ALJ here made specific findings in explaining his rationale for why he found that plaintiff "has no work-related limitation from his psychological symptoms." AR 17. The ALJ wrote, and the record supports, that plaintiff's treating psychologist opined that plaintiff's psychological functioning could improve with appropriate treatment. *Id.* at 17, 246. The ALJ wrote, and the record supports, that almost a year later, plaintiff's treating psychologist found that his depression had improved. *Id.* at 18, 323. The ALJ noted that provided plaintiff

9

continues treatment by using his medications appropriately, he "can remain attentive." *Id.* at 17. The records before him support that observation. The ALJ also relied upon the lack of evidence in the record demonstrating plaintiff's mental impairment constituted a work-related limitation. *Id.* at 18 ("No treating or examining source has opined that the claimant's [mental] impairments . . . are disabling or . . . significantly restrict his movement or activities of daily living.").

Accordingly, the ALJ did not err in leaving out these limitations in the VE questions. There also was no error in the ALJ forming a threshold determination that plaintiff's mental impairment was severe at step two and then finding no associated work-related limitation at step five. The determination of a claimant's RFC is wholly within the province of the ALJ. *See* SSR 96-8p. It is based on all the evidence in the record, and it is the ALJ's duty to consider and weigh that evidence. *See id.* Here, the ultimate RFC determination was supported by substantial evidence in the record, as discussed above, and the court will not disturb this decision.[4]

B.   The ALJ Did Not Error in Failing to Properly Consider the Medical Opinion of Plaintiff's Treating Physician.

Plaintiff further argues that the ALJ erred in rejecting the opinion of treating physician Dr. Baker without explanation. Dckt. No. 17 at 5. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen*, 80 F.3d at 1295. To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers

---

[4] Plaintiff also argues that the ALJ erred in assessing plaintiff's RFC because "mental RFC limitations are to be evaluated utilizing the *Mental Residual Function Assessment* technique, evaluating the individual in twenty categories of function relevant to the workplace. This evaluation is entirely absent, . . . ." Dckt. No. 17 at 5. Plaintiff, however, cites no authority showing that the ALJ must specifically consider and address twenty separate categories of functional limitations in determining a claimant's RFC. He does cite to 20 CFR § 404.1545(c) and 20 CFR § 416.945(c), but these regulations only generally state what types of limitations will be considered in an RFC assessment and do not directly support his position. *Id.*

whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (*citing Magallanes*, 881 F.2d at 751). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Dr. Baker was one of plaintiff's treating physicians. On February 5, 2009, Dr. Baker opined in a handwritten note that plaintiff "is currently under medical care. Duration unknown at this time. He is unable to tolerate heavy labor." AR 334. On August 27, 2009, Dr. Baker opined in another handwritten note that plaintiff "[i]s under my care. Is not cleared to return to work at this time." *Id.* The ALJ found that plaintiff is not disabled because he has the RFC to perform light work. *Id.* at 20. Plaintiff argues that in the ALJ failed to properly consider Dr. Baker's two medical opinions in making this finding.

Dr. Baker's first note is unequivocal; he opined that plaintiff could not perform "heavy labor." *Id.* at 334. However, in his second note Dr. Baker wrote plaintiff "[i]s not cleared to return to work . . . ." *Id.* Dr. Baker did not specify what type or exertional level of work plaintiff could not perform - light, heavy, or all forms.

Two interpretations are offered by the parties concerning the meaning of "work" in Dr. Baker's second note. The first, that urged by the Commissioner, is that within the context of the first note forbidding heavy work, the second note by Dr. Baker is simply again forbidding heavy

11

work. There is support for this interpretation in the record. As the ALJ notes, plaintiff's past relevant work consisted of "medium, heavy, or very heavy" jobs. *Id.* at 18. Plaintiff does not dispute this characterization of his past work. It would reasonably follow that because Dr. Baker did not clear plaintiff "to *return* to work," he meant plaintiff could not return to the work plaintiff was engaged in at the time, which was medium or heavy work. *Id.* at 18, 334 (emphasis added). Indeed, Dr. Baker did not opine that plaintiff could not perform any work at all in the earlier report, and the second report specifically states that plaintiff "[i]s not cleared to *return* to work." *Id.* at 334 (emphasis added).

Under this first interpretation, Dr. Baker opined twice that plaintiff could not engage in heavy work. Consistent with that limitation, the ALJ found at step four of the sequential evaluation process that plaintiff could not perform heavy or medium work and he did not reject Dr. Baker's opinion. Rather, the finding accepts Dr. Baker's restrictions against heavy work, and plaintiff's argument that the ALJ rejected Dr. Baker's opinion fails.

The alternative interpretation argued by the plaintiff is that the word "work" in Dr. Baker's second note means all forms regardless of exertional levels. Under this construction, the ALJ's finding that plaintiff has the RFC to perform light work and is thus not disabled would be at odds with Dr. Baker's opinion. Thus, plaintiff argues that the ALJ simply ignored Dr. Baker's medical opinion that plaintiff could not work without explanation.[5] Dckt. No. 17 at 5. There is little support for this in the record. As noted, Dr. Baker's earlier report placed a work restriction on plaintiff that was specifically focused on plaintiff's inability to tolerate heavy labor. There is nothing stated in second report, which says plaintiff was still not cleared to return to work, that changes the focus from the work preclusion of heavy labor--the sort of work

---

[5] Plaintiff argues that the ALJ ignored *both* of Dr. Baker's medical opinions that plaintiff could not work. Dckt. No. 17 at 5. However, as previously discussed, in his first note Dr. Baker only opined that plaintiff was "unable to tolerate heavy labor." AR 334. Because the ALJ's findings comply with Dr. Baker's prohibition against heavy work, plaintiff's argument that the ALJ rejected Dr. Baker's first medical opinion misstates the record. *Id.* at 16, 18-19.

12

plaintiff had previously done.  Thus, the court cannot conclude that the ALJ's interpretation and findings based on the reports of Dr. Baker are clearly erroneous or are unsupported by substantial evidence in the record.

Finally, the plaintiff's isolation of the single statement in the second report, without resort to the context of the earlier report and the nature of plaintiff's past work, reduces to an argument that the single sentence regarding the ultimate issue of disability is binding on the ALJ. That is simply a misapprehension of the "treating physican" rule.  "'Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.'"  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)); *see also* 20 C.F.R. § 404.1527(d), (d)(1) ("A statement by a medical source that" the claimant is "'unable to work' does not mean that we will determine that you are disabled."  Such statements "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination of decision of disability.").  Plaintiff acknowledges that disability is to be determined by the ALJ. Dckt. No. 24 at 4 ("Perhaps the doctors were sophisticated enough to realize that . . . [the determination of disability] is an issue reserved to the Commissioner.").  Thus, an ALJ is not obligated to provide detailed reasons for rejecting a medical expert's opinion regarding the ultimate question of disability.  *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985).  Dr. Baker's opinion that plaintiff could not work regarded the ultimate issue of disability, a determination that is reserved for the ALJ.  Accordingly, the ALJ was not required to provide a detailed explanation for rejecting this opinion.

Therefore, under either of the proposed interpretations of Dr. Baker's second note, the ALJ did not err in his consideration of Dr. Baker's opinion.

////

### C. The ALJ Properly Rejected Plaintiff's Testimony as Not Credible.

Plaintiff argues that the ALJ failed to properly determine plaintiff's credibility. Dckt. No. 17 at 6. In general, the ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See*, *e.g., Saelee*, 94 F.3d at 522. If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990); *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id*. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284; *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, daily activities, precipitating and aggravating factors, inconsistencies between testimony and conduct, and functional limitations resulting from symptoms should also be considered. *Smolen*, 80 F.3d at 1284; *Light*, 119 F.3d at 792. The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "If the claimant submits objective medical findings establishing a medical impairment that would normally produce a certain amount of pain, but testifies that [he] experiences pain at a higher level . . . the Secretary is free to decide to disbelieve that testimony, but must make specific

1   findings justifying that decision." *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986).

2   "Without affirmative evidence showing that the claimant is malingering, the Commissioner's

3   reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v.*

4   *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). An ALJ's credibility

5   assessment of the severity of a claimant's pain "should be given great weight . . . ." *Nyman*, 779

6   F.2d at 531.

7       Here, in finding plaintiff not credible the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment.

12  AR 18.

13      Plaintiff argues that this did not constitute a proper credibility determination.

14  Specifically, plaintiff argues that the ALJ failed to explicitly find plaintiff was not credible and

15  to provide clear and convincing reasons for rejecting plaintiff's testimony. Dckt. No. 17 at 6-9.

16      Although the ALJ wrote that plaintiff's statements regarding his symptoms "*are not*

17  *credible*," plaintiff claims the ALJ "failed to state whether he found . . . [plaintiff's testimony]

18  credible or not." AR 18 (emphasis added); Dckt. No. 17 at 6. Plaintiff argues that this finding is

19  insufficient because the ALJ's specific wording "has been found to be 'meaningless boilerplate'

20  . . . ." *Id.* While general boilerplate language is commonly utilized in ALJ decisions, the ALJ

21  here does not rely on this statement alone, but justifies his rejection of plaintiff's testimony with

22  clearly stated and convincing reasons. *See, Morgan*, 169 F.3d at 599. In explanation of his

23  credibility finding, the ALJ wrote:

> The medical evidence does not the support level [*sic*] of limitation for his low back and his joints that the claimant alleges. A MRI of his lumbar spine revealed no significant disk bulging or protrusion and no significant spinal stenosis. The Range of Joint Motion Evaluation Chart portion of an examination report shows all his joints to be within the normal limits for movement. The same chart

15

> indicates his low back movement is only moderately restricted. He does not use an assistive device and examiner Joel Justin Hopper, D.O. remarked that Mr. James walked about the examination room easily. Straight leg raising was negative bilaterally in the seated and supine positions. Toe and heel walking were normal bilaterally. As stated by the DDS medical consultant, there is no evidence that Mr. James' pain is as severe as he alleged. His degenerative disk disease is quite minimal and he has been discharged from treatment by one source because of his drug seeking.
>
> Michael Morgan, Psy.D. concluded that Mr. James did not meet the criteria for bipolar disorder and that there were insufficient signs and symptoms for a specific anxiety disorder. He did have a depressive disorder NOS but a medical note in July 2009 stated that his depression had improved.

AR 18 (citations omitted).

The ALJ found plaintiff was not fully credible due to the lack of medical evidence supporting the alleged level of limitation.[6] *Id.* Plaintiff is correct that an ALJ cannot base a credibility finding on this basis alone. Dckt. No. 17 at 8-9. "A finding that the claimant lacks credibility cannot be premised *wholly* on a lack of medical support for the severity of his pain." *Light*, 119 F.3d at 792 (emphasis added) (ruling an ALJ erred in finding a claimant not credible without articulating a reason other than a lack of supporting objective medical evidence).

However, in addition to the lack of medical support, the ALJ also premised his finding in part on plaintiff's drug-seeking behavior, which itself can constitute "a clear and convincing reason to discount a claimant's credibility about pain." AR 18 ("he has been discharged from treatment by one source because of his drug seeking"); *Gray v. Comm'r of Soc. Sec. Admin.*, 365 Fed.Appx. 60, 63 (9th Cir. 2010); *see Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (ruling that in citing the particular likelihood of the complainant's drug-seeking behavior the ALJ properly determined his testimony was not credible). Plaintiff argues that the discharging

---

[6] Though plaintiff disagrees with the ALJ's finding that there is a lack of medical evidence supporting the alleged level of limitation, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Dckt. No. 17 at 8; *Thomas*, 278 F.3d at 954. Here, the ALJ discussed the specific medical evidence that supports his determination. The court will not disturb this finding because the ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund*, 253 F.3d at 1156 (citations omitted).

doctor later resumed treatment. Dckt. No. 17 at 7. Nevertheless, even if the doctor had never terminated treatment, this is irrelevant to the fact that plaintiff sought out drugs. Plaintiff's drug-seeking behavior in addition to the lack of medical evidence provides adequate reason for the ALJ to reject plaintiff's testimony; no more is required.[7]

Plaintiff further details an extensive list of evidence not addressed by the ALJ. Dckt. No. 17 at 7-8. Plaintiff essentially picks through the more than three hundred page record, carefully identifies select pieces of evidence, but then strips them of their context and argues that the ALJ should have devoted explicit attention to each of them in his written decision. The argument would render the decision encyclopedic in length and content and add little to understanding the reasoning for the ALJ's findings. The ALJ is "not required to discuss every piece of evidence." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). "[E]vidence that is neither significant nor probative" does not need to be discussed. *Id.* For instance, plaintiff is correct that the ALJ did not discuss that plaintiff "had a past history of suicide attempt." Dckt. No. 17 at 7. However, plaintiff's one-time suicide attempt occurred when he was nineteen years of age and plaintiff's brief provides no explanation for how it is relevant to the issues that were before the ALJ. AR 245. Furthermore, plaintiff expressly and repeatedly discounted suicide as a possible

---

[7] Plaintiff also argues that the timing of the ALJ's credibility determination was improper. Dckt. No. 17 at 7. Specifically, plaintiff argues that the ALJ improperly determined plaintiff's credibility after assessing his RFC. *Id.* However, plaintiff does not elucidate any basis for demonstrating that this occurred. The only section of the ALJ's decision plaintiff cites to in making this argument, is the ALJ's finding that portions of plaintiff's testimony were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR at 18. However, plaintiff does not explain how this finding is inappropriate. This credibility finding is located immediately prior to the ALJ's articulation of the reasons underlying his RFC determination and is part of the ALJ's explanation of this determination. *Id.* at 16-18. An RFC determination includes the ALJ's assessment of the credibility of plaintiff's testimony regarding his pain and symptoms. *See* 20 CFR § 404.1545(a) ("Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting . . . . We will assess your residual functional capacity based on all the relevant evidence in your case record."); *see also* 20 CFR § 404.1529(c), (c)(1) (In "[e]valuating the intensity and persistence of your symptoms, such as pain, and determining the extent to which your symptoms limit your capacity for work" "we consider all of the available evidence, including . . . statements from you . . . about how your symptoms affect you."). Thus, no basis for error is demonstrated.

symptom of his impairments. Twice plaintiff told different doctors that he was not suicidal and had no suicidal ideas. *Id.* at 245, 325. Plaintiff's own admissions establish that this evidence "is neither significant nor probative." *Howard*, 341 F.3d at 1012. The ALJ accordingly was not required to discuss this evidence. *Id.* Furthermore, even if the ALJ was required to discuss the immaterial evidence plaintiff points to, it is harmless error because the ALJ justifies his credibility determination with clear and convincing reasons. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991); *Morgan*, 169 F.3d at 959.[8]

Conclusively, the ALJ's credibility findings were thoroughly explained and supported. Although plaintiff may disagree with the specific findings, the findings were supported by clear and convincing evidence in the record and the court will not second-guess them. *Thomas*, 278 F.3d at 959. Therefore, plaintiff's challenge on this ground fails.

IV. CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence and is based on the proper legal standards. Therefore, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: September 26, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[8] Plaintiff also argues that the ALJ ignored the lack of evidence in the record that he does not suffer from the pain and depression as claimed. Dckt. No. 17 at 9. A lack of "positive evidence [i.e. medical opinion] that [a] claimant was not suffering as much pain as he claimed to suffer" is a consideration in credibility determinations. *See Gallant*, 753 F.2d at 1455. However, as discussed above, in this case the ALJ specifically considered evidence in the record, including medical opinion, that plaintiff was not suffering either as much pain or depression as he claimed.